UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SUTHERLAND,

                 Plaintiff,        Civil Action No. 18-13568
                                      Honorable Stephen J. Murphy, III
v.                              Magistrate Judge Elizabeth A. Stafford

PAT WARREN, *et al.*,

                 Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART DEFENDANTS' SUMMARY JUDGMENT
MOTION [ECF NO. 58]; TO GRANT DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT [ECF NO 59]; TO GRANT IN PART
SUTHERLAND'S MOTION FOR BENCH TRIAL [ECF NO. 62];
AND TO *SUA SPONTE* DISMISS CONSPIRACY COUNTS**

## I.   Introduction

Plaintiff William Sutherland, a prisoner proceeding *pro se*, sues

Corizon Health, Inc., and some employees of Corizon and the Michigan

Department of Corrections (MDOC),[1] under 42 U.S.C. §§ 1983 and 1985.

[ECF No. 51].  The Honorable Stephen J. Murphy, III, referred this case to

---

[1] Sutherland's second amended complaint names as defendants Corizon employees Kim Farris, Keith Papendick and Charles Jamsen, and MDOC employees Lana McCarthy, James King, Patrick Warren, Melissa Hartnagel and Heather Cooper.  [ECF No. 51, PageID.589].  He also names a John Doe.  [*Id.*].

the undersigned for all pretrial matters under 28 U.S.C. § 636(b).  [ECF No. 60].

The Corizon defendants move for summary judgment and the MDOC defendants move for partial summary judgment.  [ECF No. 58; ECF No. 59].  Both motions are premised primarily on Sutherland's alleged failure to exhaust administrative remedies.  [*Id.*].  The MDOC defendants also allege that Sutherland cannot sue them in their official capacities.  In addition to responding to defendants' motions, Sutherland moves for a bench trial on the exhaustion issues.  [ECF No. 62].

For the following reasons, the Court recommends that the Corizon defendants' motion for summary judgment be granted in part and denied in part; that the MDOC defendants' motion be granted; that Sutherland's motion for bench trial be granted as it relates to Charles Jamsen, M.D., Keith Papendick, M.D., and Corizon; and that the conspiracy counts of Sutherland's operative complaint be dismissed *sua sponte* under 28 U.S.C. § 1915A.

## II.  Background

Sutherland's second amended complaint alleges that he has serious medical conditions that confine him to a wheelchair, and that defendants failed to provide the necessary medical treatment.  [ECF No. 51].  He also

2

claims that the MDOC defendants transferred him from Cotton Correctional Facility (JCF) to Macomb Correctional Facility (MRF) in retaliation, and that MRF has no proper housing for him.  [*Id.*, PageID.592-593, 596].  He asserts that the revocation of his special housing causes him "great pain and suffering."  [*Id.*, PageID.614].  Sutherland further alleges that the defendants conspired against him, failed to disclose evidence and intentionally destroyed or confiscated records.  [*Id.*, PageID.604-612].  He seeks "compensatory and punitive damages in whatever amount the Court and Jury deem appropriate, plus costs and reasonable attorneys' fees." [*Id.*].

## III.   Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

3

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (emphasis in original). A prisoner's

grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation and internal quotation marks omitted).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," but it is self-evident that an untimely or otherwise improperly filed grievance does not fulfill the exhaustion requirement.  *Id.*; *see also Woodford*, 548 U.S. at 97.  Finding otherwise "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a

preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

**C.**

The Corizon defendants—Corizon, Kim Farris, Charles Jamsen and Keith Papendick—move for summary judgment based on Sutherland's alleged failure to exhaust his administrative remedies.  [ECF No. 58].  The grievance procedure at issue is MDOC Policy Directive 03.02.130, which has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances.  [ECF No. 58-2, PageID.730-736; ECF No. 59-1, PageID.772-778].

The three-step procedure includes several deadlines.  The prisoner must first attempt to resolve informally the problem with the allegedly offending staff within two business days of becoming aware of the grievable issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five days of that informal effort.  PD 03.02.130, ¶¶ P and R.  The prisoner may then file a Step II grievance appeal within ten days of receiving the Step I response or, if no response was received, within ten business days after the date the response was

6

due.  *Id.* at ¶ BB.  The same schedule applies to a Step III appeal—it is due

within ten business days of receiving the Step II response or, if no

response was received, within ten business days after the date the

response was due.  *Id.* at ¶ FF.  The prisoner must exhaust appeals

through Steps II and III before filing suit.  *Id.* at ¶¶ BB, FF.  MDOC's

grievance policy states that grievances must include "dates, times, places,

and names of all those involved in the issue being grieved."  *Id.* at ¶ R.

### 1.  *Charles Jamsen, M.D.*

Sutherland alleges that Dr. Jamsen refused to provide him with

needed medical care and indicated that Sutherland no longer needed a

wheelchair accessible, barrier free accommodation.  [ECF No. 51,

PageID.593-594].  Sutherland contends that Jamsen's decision to remove

this special accommodation caused him to no longer qualify for a single

cell.  [*Id.*].  Because Sutherland had to share his cell with another inmate,

he had to bend to get in and out of bed, causing Sutherland undue pain.

[*Id.*].

Sutherland filed grievance number JCF-18-04-0921-28e alleging that,

in October 2017, Jamsen deleted his barrier free, wheelchair accessibility

accommodation.  [ECF No. 58-1, PageID.728].  Sutherland's Step I

grievance form says he learned about Jamsen's termination of his special

7

accommodation on April 6, 2018, that he signed the Step I form on April 12, 2018, and that the grievance coordinator received it on April 19, 2018.  [*Id.*]. The grievance was rejected at Step I as untimely, but the rejection does not specify which deadline Sutherland missed.  [*Id.*, PageID.729].  In his appeals at Steps II and III, Sutherland reiterated that he learned of Jamsen's grievable conduct on April 6, 2018.  [*Id.*, PageID.726].

The rejection of Sutherland's grievance as untimely was upheld at Steps II and III.  [*Id.*, PageID.725, 727].  None of MDOC's responses to this grievance specified the deadlines that Sutherland allegedly missed and there is no indication that prison officials addressed Sutherland's allegation that he was belatedly informed of Jamsen's alleged termination of his special accommodation.  [*Id.*, PageID.725-729].

In their motion for summary judgment, the Corizon defendants' argument about grievance number JCF-18-04-0921-28e is confusing. They allege, "Mr. Sutherland submitted this grievance on April 19, 2018; however, the incident date is listed as October 25, 2017, which is outside of the five-day window outlined in PD. 03.02.130."  [ECF No. 58, PageID.685]. But the policy directive says nothing about a five-day window between the incident date and the filing of a Step I grievance; the five-day window identified in the policy directive is between the time of the informal attempt

8

to resolve the issue and the filing of the Step I grievance.  PD 03.02.130,

¶ P.  And although the policy directive requires the prisoner to identify the

date of the grievable conduct, the prisoner's deadline for beginning the

grievance process is the date on which the prisoner becomes "*aware* of the

grievable issue."  *Id.*, ¶¶  P & R (emphasis added).

As noted, Sutherland alleges that he became aware of the alleged

grievable conduct on April 6, 2018.  The Corizon defendants suggest that

Sutherland could have filed a timelier grievance about the removal of his

special accommodation "against an individual whose identify had not yet

been ascertained." [ECF No. 66, PageID.1059].  But the Corizon

defendants provide no evidence that Sutherland was aware earlier than

April 6, 2018 that *anyone* had removed the special accommodation.

And Sutherland cites language in the policy directive stating that a

"grievance shall not be rejected if there is a valid reason for the delay; e.g.

transfer."  PD 03.02.130, ¶ G(3).  Sutherland alleges that his grievance

process was delayed because he transferred from JCF to the Carson City

Regional Facility (DRF).  [ECF No. 64, PageID.1047].  The Corizon

defendants reply that Sutherland's argument that his transfer caused delay

should be rejected because he did not raise that claim during the grievance

process.  [ECF No. 66, PageID.1058].  But they do not deny that Sutherland was transferred during the relevant period.  [*Id.*].

Nor do the Corizon defendants cite authority requiring a prisoner to raise a claim that his transfer caused excusable delay during the grievance process in order to preserve that argument for a civil action.  In *Spicer v. Schooley*, the Court denied the defendants' summary judgment on the issue of exhaustion when the plaintiff alleged that the grievance process was delayed because of a prison transfer.  No. 18-12911, 2019 WL 2929120, at *2 (E.D. Mich. July 8, 2019).  In *Spicer*, the plaintiffs had not said during the grievance process that his transfer caused his delay; he raised the transfer as the reasons for the delay for the first time in response to the defendants' motions for summary judgment.  *Spicer*, 2019 WL 2929120 at *2.  Even so, the court found that questions of fact existed on the issue of whether the grievance was properly rejected as untimely.  *Id.*

The *Spice*r court emphasized, "Defendants bear the burden of production and persuasion regarding exhaustion."  *Id.*, (citing *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012)).  The defendants in *Spicer* did not meet their burden because their response brief said nothing about the plaintiff's claim that his delay was caused by his transfer.  *Id.*

10

The Corizon defendants also do not meet their burden of production or persuasion.  They show no proof that Sutherland was notified before April 6, 2018 that his special accommodation had been removed; they have been vague about the deadline they allege Sutherland missed; they do not address whether or when he was transferred during the relevant period; and they present no evidence that rebuts his claim that his transfer delayed his ability to meet the grievance process deadlines.

Thus, as it relates to Jamsen, defendants' motion for summary judgment should be denied.  Instead, the disputed issues of fact related to the grievance against Jamsen should be decided by bench trial.  *Lee*, 789 F.3d at 678; *Salem v. Michigan Dep't of Corr.*, No. 13-CV-14567, 2019 WL 4409709, at *16 (E.D. Mich. Sept. 16, 2019).  As such, for this claim, Sutherland's motion for a bench trial [ECF No. 62] should be granted.

## 2. *Kim Farris*

Sutherland alleges that he saw Farris, a physician's assistant, in May 2018, and that she refused his request for a detail for a wheelchair accessible room.  [ECF No. 51, PageID.593].  Farris also allegedly denied Sutherland's request for a blanket detail when he complained that his cellmate kept the window open.  [*Id.*].  Sutherland claims that Farris then dismissed the severity of his pain after looking at his x-ray, and that she

refused his request to order an MRI or CT scan.  [*Id.*].  He alleges that

Farris said she would not do anything but give him a "meals in detail,"

leading him to threaten to file a grievance.  [*Id.*].  Sutherland says that

Farris responded in a loud voice, "[A]nd you want me to issue you a meals

in detail," and that then he went a week with no meals in detail.  [*Id.*].

Sutherland filed grievance number MRF-18-05-0822-28e against

Farris on May 23, 2018, making the same allegations as in the complaint.

[ECF No. 58-1, PageID.722].  The issue was investigated, denied at Steps I

and II, and rejected as untimely at Step III.  [*Id.*, PageID.719, 721, 723].

Sutherland received his Step II response on July 6, 2018, making his Step

III grievance due by July 21, 2018.  [*Id.*, PageID.719].  But Sutherland's

Step III grievance was not received until August 1, 2018, outside of the

"suitable timeframe after the due date of July 21, 2018," after allowing for

the "grace period for standard mail."  [*Id.*, PageID.719; PD 03.02.130, ¶

FF].

In response to the motion for summary judgment, Sutherland asserts

that he had to mail the grievance to Lansing, Michigan and had no control

over the United States Postal Service.  [ECF No. 64, PageID.1048].

Sutherland provides no affidavit or other corroborating evidence to show

that he timely mailed his Step III appeal forms.  When, as here, a defendant

has met the initial summary judgment burden of showing that the plaintiff
failed to properly exhaust a grievance, the "[p]laintiff's unsupported
assertions to the contrary are insufficient." *Bradford v. Albercook*, No. 16-
CV-12214, 2018 WL 4001268, at *4 (E.D. Mich. July 31, 2018), *adopted*,
2018 WL 3997913 (E.D. Mich. Aug. 21, 2018).  Thus, the Court must find
Sutherland's grievance unexhausted because he has provided no
"corroborating evidence that the Step III appeal forms were actually mailed
in accordance with MDOC policy." *Id.*

Sutherland filed grievance number MRF-18-10-1548-28I against
Farris on October 12, 2018, alleging that Farris left him sitting in a double
bunk bed, which forced him to bend and twist when he got in and out of the
bed.  [ECF No. 58-1, PageID.706].  The Corizon defendants address this
grievance in their motion for summary judgment, [ECF No. 58, PageID.686-
687], but Sutherland's factual claims against Farris in the operative
complaint do not include any of the issues raised against her in the October
2018 grievance, [ECF No. 51, PageID.593].  Even so, since both parties
addressed the grievance, the Court will too.

Sutherland wrote in the grievance that his neurologist had instructed
that he not bend, and that Farris's actions exacerbated his back injury and
prevented him from healing.  [ECF No. 58-1, PageID.706].  Sutherland said

13

that, to resolve the issue, he should be transferred "back to JFC, single room, where [he] was healing not having to bend." [*Id.*].  The grievance was rejected at Step I for failure "to attempt to resolve the issue with staff" before filing the grievance.  [*Id.*, PageID.707].

The Court finds that grievance number MRF-18-10-1548-28I was not properly exhausted.  In the space for Sutherland to detail his attempt to resolve the issue, he wrote that he "informed" Farris about his no-bending restriction on September 20, 2018, but Sutherland said nothing about asking Farris for any specific relief, including requesting a transfer to JFC. [*Id.*, PageID.706].  In addition, although Sutherland's Step I grievance was due within five days of his attempt to informally resolve the issue, the grievance form says that he submitted it on September 27, 2018.  [ECF No. 58-1, PageID.705; *see also* PD 03.02.130, ¶ P].

Thus, the evidence shows that Sutherland exhausted no claim against Farris and summary judgment of the claims against her should be granted.

### 3. <u>Corizon and Keith Papendick, M.D.</u>

The Corizon defendants alleged in their motion that Sutherland failed to file any grievances against Corizon or Dr. Papendick.  [ECF No. 58, PageID.687].  Sutherland responds that he did grieve them.  [ECF No. 64,

14

PageID.1049].  The Corizon defendants then admitted in their reply brief that Sutherland filed grievance number JCF-15-07-1865-28e against Corizon and Papendick in 2015.  [ECF No. 66, PageID.1060].[2]  Though the Corizon defendants did not address this grievance in their motion, they argue in their reply brief that the grievance was rejected as untimely and that summary judgment should be granted in favor of Corizon and Papendick on that basis.  [*Id.*].  "It is well-settled that a movant cannot raise new issues for the first time in a reply brief."  *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012).  The reason for this rule is that consideration of new issues that were raised for the first time in a reply brief "deprives the non-moving party of its opportunity to address the new arguments."  *Hickman v. Sloan Fluid Accessories*, Inc., 833 F. Supp. 2d 822, 828 (E.D. Tenn. 2011) (citation and quotation marks omitted).

Summary judgment of the claims against Corizon and Papendick should therefore be denied, and the disputed facts about grievance number JCF-15-07-1865-28e should be resolved in a bench trial, as requested in Sutherland's motion, [ECF No. 62].  *Lee*, 789 F.3d at 678; *Salem,* 2019 WL 4409709 at *16.

---

[2] The records indicate that the grievance number was changed from JCF-15-07-1865-12d3 to JCF-15-07-1865-28e at Step III.  [ECF No. 59-2, PageID.1002].

**D**.

In their motion for partial summary judgment, the MDOC defendants argue that the claims against Patrick Warren and Lana McCarthy should be dismissed because Sutherland did not name them in any grievances, and thus did not exhaust his administrative remedies against them.  [ECF No. 59, PageID.761-767; ECF No. 59-2].   "MDOC policy explicitly required him to name each person against whom he grieved."  *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009).

Sutherland responds that a bench trial is needed about Warren and McCarthy because the grievances identified by defendants "are but a few" of the ones he filed and that his grievance "attempts were [stymied] at every step."  [ECF No. 63, PageID.1042].  He is right that disputed issues of fact about exhaustion under the PLRA should be decided by bench trial. *Lee*, 789 F.3d at 678.  But a bench trial is warranted when there are "genuine issues of material fact related to the exhaustion of administrative remedies."  *Salem*, 2019 WL 4409709 at *16.  Sutherland's "conclusory statements, unsupported by specific facts, are not sufficient to rebut the record of his grievance filings at the summary judgment stage of proceedings."  *Jackson v. Powell*, No. 1:18-CV-466, 2019 WL 4674874, at *4 (W.D. Mich. Aug. 27, 2019), *adopted*, 2019 WL 4670741 (W.D. Mich.

Sept. 25, 2019) (citing *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).  Sutherland thus fails to show that genuine issues of material fact exist on the grievance issues as it relates to Warren or McCarthy.

Sutherland claims that he filed grievance number JCF-16-02-250-12z1 against McCarthy.  [ECF No. 51, PageID.621].  But the grievance is against the "nursing staff," not Health Unit Manager McCarthy.  [*See* ECF No. 59-2, PageID.943].  Courts have recognized a limited exception to the requirement that a prisoner name each officer about whom he grieves; "[a]n inmate need not identify each officer by name when the identities of the particular officers are unknown."  *Watson v. Jamsen*, No. 16-13770, 2017 WL 9477709, at *3 (E.D. Mich. Aug. 11, 2017), *adopted*, No. 16-CV-13770, 2017 WL 4250477 (E.D. Mich. Sept. 26, 2017) (internal citation and quotation marks omitted).  The "inmate must still describe the person or persons against whom he has a complaint with sufficient information to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court."  *Id.* (internal citation and quotation marks omitted).

Here, Sutherland did not describe McCarthy in any manner to alert prison officials that her actions were being grieved.  [*See* ECF No. 59-2, PageID.943].  He thus does not satisfy the limited exception allowed when

the inmate does not know the name of the person he grieves.  *Watson*, 2017 WL 9477709, at *3.  Sutherland's complaint alleges that McCarthy "was responsible [ ] for the operation of the Health Care and it was her job" to ensure he received the necessary medical care, and he alleges that Warren failed to investigate or speak "to anyone regarding [his] serious medical need[s]." [ECF No. 51, PageID.595, 620].  But he does not show that he grieved McCarthy and Warren to give prison officials the required fair notice of the misconduct he alleges they committed in their supervisory capacities.  *Bell*, 450 F.3d at 654.

As such, there is no genuine factual dispute to support Sutherland's claim that he exhausted his available administrative remedies for his claims against Warren and McCarthy, and his claims against them should be dismissed.

## E.

The MDOC defendants next argue that the Eleventh Amendment bars § 1983 claims against them in their official capacity.  [ECF No. 59, PageID.768-769].  This argument is more properly categorized as being for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

18

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Eleventh Amendment protects states, their departments and agencies from suit in federal court for injunctive relief or damages by their own citizens or citizens of another state. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This immunity extends to state employees being sued in their official capacity as well. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). Absent clear abrogation of a state's immunity under a valid exercise of power, it may not be sued without its consent. *Halderman*, 465 U.S. at 98-99; *Green v. Mansour*, 474 U.S. 64, 68 (1985). Michigan has not consented to civil rights suits in federal court. *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). And it is well settled that the MDOC is immune from being sued for money damages under § 1983. *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Thus, Sutherland's claims for monetary damages against the MDOC defendants in their official capacities should be dismissed.

**F.**

The Court must *sua sponte* dismiss a claim filed by a *pro se* prisoner if the claim (1) is frivolous; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief against a defendant who is immune from that relief.  28 U.S.C. § 1915A; *In re Prison Litig. Reform Act*, 105 F.3d at 1134 (6th Cir. 1997).  Counts V to IX of the operative complaint allege that defendants conspired with one another to deprive Sutherland of his constitutional rights.  [ECF No. 51, PageID.610-613].  The Court recommends that these claims be dismissed for failure to state a claim upon which relief can be granted.

The Sixth Circuit has "adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees."  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991).  The *Hull* court explained that a conspiracy requires "two persons or entities" and that "[a] corporation cannot conspire with itself any more than a private individual can."  *Id.*  The court also said that "it is the general rule that the acts of the agent are the acts of the corporation."  *Id.*

MDOC and Corizon employees are "all agents of the State of Michigan with respect to providing appropriate conditions to incarcerated

20

individuals." *Boone v. Heyns*, No. 12-14098, 2017 WL 3977524, at *4 (E.D. Mich. Sept. 11, 2017).  The defendants here are "thus all the same 'person' and the intracorporate conspiracy doctrine applies." *Id.*; *see also Burley v. Abdellatif*, No. 16-CV-12256, 2018 WL 3300315, at *12 (E.D. Mich. Jan. 26, 2018), *adopted*, No. 16-12256, 2018 WL 1384235 (E.D. Mich. Mar. 19, 2018) (finding that a conspiracy claim against Corizon employees failed because of the intracorporate conspiracy doctrine).

Thus, Counts V to IX of Sutherland's second amended complaint should be dismissed for failure to state a claim.

## IV.   Conclusion

The Court recommends that the Corizon defendants' motion for summary judgment **[ECF No. 58]** be **GRANTED IN PART AND DENIED IN PART**, and the claims against Farris be **DISMISSED WITHOUT PREJUDICE**; that the MDOC defendants' motion for partial summary judgment **[ECF No. 59]** be **GRANTED**, and the claims against Warren and McCarthy be **DISMISSED WITHOUT PREJUDICE**; that Sutherland's motion for bench trial **[ECF No. 62]** be **GRANTED** for the grievances against Dr. Jamsen, Corizon and Dr. Papendick; and that Counts V to IX of the second amended complaint be **DISMISSED *SUA SPONTE***.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: September 8, 2020

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 8, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager