UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM SUTHERLAND,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>PATRICK WARREN, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 18-13568<br>Honorable Stephen J. Murphy, III<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 105)**

### I.   Introduction

After most defendants were dismissed, what remains of Plaintiff William Sutherland's second amended complaint are 42 U.S.C. § 1983 claims against resident unit manager (RUM) James King and assistant resident unit supervisor (ARUS) Melissa Hartnagel, who both work at the G. Robert Cotton Correctional Facility (JCF).  ECF No. 51; ECF No. 85. The Honorable Stephen J. Murphy, III, referred this case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b).  ECF No. 60.

Defendants move for summary judgment and briefing is complete. ECF No. 105; ECF No. 107-109; ECF No. 110.  The Court did not consider

Sutherland's response to defendants' reply brief, which he filed without moving for leave of court. ECF No. 111. The general rule is that a non-moving party has no right to respond to a reply brief, and thus the applicable local rule does not allow for a sur-reply. E.D. Mich. LR 7.1 (permitting motions, responses, and replies); *NCMIC Ins. Co. v. Smith*, 375 F. Supp. 3d 831, 835 (S.D. Ohio 2019) (stating that a party wishing to file a sur-reply must file a motion for leave that sets forth good cause).

For the reasons below, the Court recommends that defendants' motion be granted.

## II.   Background

Sutherland is permanently wheelchair bound, and thus the Michigan Department of Corrections (MDOC) has issued Medical Detail Special Accommodations restricting him to barrier-free, wheelchair-accessible, and bottom-bunk housing. ECF No. 107, PageID.1397. He makes these factual claims against King and Hartnagel in his second amended complaint:

> 56.   Defendant King was made aware of Plaintiff's medical condition by the H.U.M. via email as to Plaintiff having a single person cell.
>
> 57.   Defendant King refused stating that prisoners like Plaintiff seemed to think they are entitled to special treatment. Plaintiff

said all I'm asking for is what the medical staff tell you to give me so I won't be in so much pain.

58.  Defendant King did threaten Plaintiff with placement in the HOLE is he continued to belly ache about the single person cell.

59.  Defendant King placed a transfer on Plaintiff that caused him to be transferred to another facility which could not meet his medical treatment as a [*sic*] retaliatory actions.

60.  Plaintiff placed in room with another prisoner who kept his chair in the middle of the room so that I had to try and pick up my walker to get in and out of the room.

61.  Plaintiff went to Defendant Hartnagel and explained to [her][1] that my detail required no blockage and that the other prisoner in the room was making it impossible for Plaintiff to move in and out of the room without severe pain.

62.  Defendant Hartnagel said [she] did not care about any detail, it has nothing to do with telling another prisoner to move his stuff.

63.  Plaintiff had told Defendant that he had fallen several times and could not stand to keep trying to move around the chair.

64.  Asked Defendant to move him to another unit where he could get in and out of the shower without falling, Defendant told Plaintiff [she] would not do.

ECF No. 51, PageID.596.

---

[1] Sutherland uses a male pronoun to refer to ARUS Melissa Hartnagel in the second amended complaint, but he uses a female pronoun for Hartnagel in his deposition.  ECF No. 51, PageID.596; ECF No. 105-3, PageID.1361.

Though Sutherland's allegations against King and Hartnagel include no dates, the evidence shows that the relevant events occurred in July and August 2017, and March 2018 (when Sutherland was transferred out of JCF).  Sutherland says in his response brief that King and Hartnagel were "fully aware" of his medical need for a single-man cell in August 2017.  ECF No. 107, PageID.1379.  Later in his brief, Sutherland describes being forced to remain in the A Unit from April 2016 to July 2017, but he provides no evidence of complaining about his housing until July 2017.  ECF No. 107, PageID.1387.  And in his August 1, 2017 grievance, Sutherland wrote that King committed cruel and unusual punishment in July 2017 by refusing to move Sutherland to a single-man cell with barrier-free access and a handicap shower.  ECF No. 59-2, PageID.838-840.  Sutherland submitted another grievance on August 8, 2017 complaining that Hartnagel refused to move him to a single-man room with a handicap shower.  *Id*., PageID.833-835.

King's affidavit supports a finding that the relevant period began in July 2017.  He says that both the A and B Units of JCF have wheelchair ramps and handicap accessible showers, but only the B Unit has single-man cells.  ECF No. 105-2, PageID.1345.  Sutherland was housed in the A Unit beginning in March 2017.  *Id.*  King asserts that Sutherland requested

4

a transfer to the B Unit, but his Special Accommodations did not authorize a single cell. *Id.* To confirm, King sent an email on July 24, 2017 to the Health Care Unit asking if Sutherland was authorized for a single-man cell, and a nurse responded that he was not. *Id.*, PageID.1345, 1349.

The next day, a housing unit manager (HUM) emailed King and Hartnagel to say that Sutherland said that he needed a cell with better wheelchair and walker access. *Id.*, PageID.1346, 1351. Hartnagel responded by asking the HUM if Sutherland had a walker accommodation, and the HUM responded that he did not. *Id.* On July 27, 2017, King submitted a request to the deputy warrant to have Sutherland moved to the B Unit, and the deputy warden approved it. *Id.*, PageID.1346, 1353-1354. Sutherland says in his response brief that he was transferred from the A Unit on July 28, 2017, while a grievance response says that he moved on August 11, 2017. ECF No. 107, PageID.1387; ECF No. 59-2, PageID.837.

King denies having any other involvement in deciding Sutherland's housing after he made the request to move Sutherland to the B Unit. ECF No. 105-2, PageID.1346-1347. Of relevance, King denies orchestrating Sutherland's move from JCF in March 2018 or having the authority to orchestrate that kind of move. *Id.*, PageID.1347, 1355-1356. The order transferring Sutherland out of JCF was approved by R. Gilbert, and the

5

comments say that the transfer was so that JCF could accommodate another wheelchair-bound prisoner with special dietary needs. *Id.*, PageID.1355-1356.

Hartnagel likewise denies having the authority to assign a prisoner to a different unit or to a particular cell. ECF No. 105-4, PageID.1365.

Sutherland's legal claims against King and Hartnagel are somewhat unclear. In Count I of his second amended complaint, Sutherland alleges defendants violated his rights under 42 U.S.C. § 1983 and that they did so intentionally, with deliberate indifference, or with reckless disregard for the truth. ECF No. 51, PageID.602-603. He cites no constitutional right in Count I. In Count II to Counts IV, Sutherland says that defendants violated the First, Fifth, and Fourteenth Amendments by failing to disclose evidence and destroying property, but none of his factual allegations against King or Hartnagel addressed evidence or property. *Id.*, PageID.596, 604-608.[2]

Despite the lack of clarity in parts of Sutherland's second amended complaint, the parties' briefing suggests that they agree that Sutherland is pursuing claims that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights; and that King

---

[2] Judge Murphy dismissed Counts V to IX. *Id.*, PageID.608-613; ECF No. 85.

retaliated against him by transferring him to another prison in violation of the First Amendment. ECF No. 105; ECF No. 107.

Defendants argue that they did not violate Sutherland's constitutional rights and that they enjoy qualified immunity.

### III. Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id*. at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

Qualified immunity applies when, viewing the evidence in a light most favorable to the plaintiff, the defendant did not violate a clearly established constitutional right. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). The evidence fails to show that defendants violated Sutherland's constitutional rights, meaning that defendants are entitled to qualified immunity and their motion for summary judgment should be granted.

## B.

A prison official's "deliberate indifference" to an inmate's serious medical needs constitutes "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment and is actionable under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such an action has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege a medical need that is "'sufficiently serious.'" *Id*. at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations and internal quotation marks omitted). The subjective

component of the deliberate indifference test requires that the prison official had a sufficiently culpable state of mind in denying medical care. *Warren v. Prison Health Servs*., 576 F. App'x 545, 553 (6th Cir. 2014). A plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

Sutherland does not satisfy either the objective or subjective component. He asserts that he had a serious medical need for a single-man and a barrier-free cell. To show that defendants were aware of those serious medical needs, Sutherland relies on two documents. First, he cites his Special Accommodations that restricted him to barrier-free, wheelchair-accessible, and bottom-bunk housing on his Medical Detail Special Accommodations. ECF No. 107, PageID.1397. The second document is January 2000 guidelines of MDOC Medical Service Advisory Committee which say, "Patients who are wheelchair-bound will be automatically placed in a barrier-free wheelchair accessible cell. *This special accommodation will replace the need for health care to order single person cell*." *Id*., PageID.1393 (emphasis added). Neither document showed that Sutherland needed a single-man cell, and King confirmed that Sutherland

9

had no Special Accommodation for a single-man cell by asking the Health Care Unit on July 24, 2017. ECF No. 105-2, PageID.1349. Thus, Sutherland's claim that he had a serious medical need for a single-man cell, and that defendants deliberately disregarded it, lacks merit.

The Special Accommodations and Advisory Committee guidelines support Sutherland's claim that he had a serious medical need for a barrier-free cell. ECF No. 107, PageID.1393, 1397. But defendants did not disregard that serious medical need during the relevant period in July and August 2017, as shown by King's July 27, 2017 request to have Sutherland moved to the B Unit, which has single-man cells. ECF No. 105-2, PageID.1345-1346, 1353-1354. The Court is also unpersuaded that Hartnagel's July 2017 email to the HUM asking whether Sutherland had a walker accommodation supports his claim of deliberate indifference. *See* ECF No. 105-2, PageID.1351. Hartnagel was merely clarifying whether Sutherland had a walker accommodation after the HUM wrote that Sutherland needed a cell with better wheelchair and walker access. *Id.*, PageID.1346, 1351. Hartnagel's request for clarification does not equate to deliberate disregard.

Defendants' motion for summary judgment of his Eighth Amendment claims should be granted.

## C.

Sutherland says in his second amended complaint that King retaliated against him in violation of the First Amendment by moving him out of JCF. ECF No. 51, PageID.596. To succeed on his retaliation claim, Sutherland must show that: (1) he was engaged in conduct protected by the First Amendment; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [Sutherland's] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To sustain his claim against King, Sutherland need not show that King made the ultimate decision to transfer him. Rather, King could be liable if he set in motion Sutherland's transfer in retaliation for King's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694–96 (6th Cir. 2012). And Sutherland can prove the connection between King's actions and his protected conduct with circumstantial evidence. *Id.*

But King states by affidavit that he was not involved in Sutherland's transfer out of JCF, which took place eight months after his grievances. ECF No. 105-2, PageID.1347, 1355-1356. King also notes that the records show that Sutherland was transferred out of JCF to accommodate another

11

wheelchair-bound prisoner with special dietary needs. *Id.* In response, Sutherland speculates that King had to approve his transfer out of JCF and that King acted out of retaliation, but Sutherland has no proof. ECF No. 107, PageID.1385-1386. "Mere speculation [ ] will not suffice to defeat a motion for summary judgment." *Savidge v. Pharm-Save, Inc.*, ___ F. Supp. 3d. ___, No. 3:17-CV-186-CHB, 2021 WL 5181031, at *2 (W.D. Ky. Nov. 8, 2021).

Sutherland cannot sustain his retaliation claim without even circumstantial evidence that King was personally involved in, or set in motion, the decision to transfer him out of JCF. *Pineda v. Hamilton County, Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (stating that a defendant must be personally involved in the unconstitutional action to be liable); *King*, 680 F.3d at 694–96 (noting that plaintiff must prove that defendant set in motion adverse action).

### IV. Conclusion

The Court recommends that defendants' motion for summary judgment, **ECF No. 105**, be **GRANTED**.

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: February 16, 2022

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2022.


                                       s/Marlena Williams
                                       MARLENA WILLIAMS
                                       Case Manager